UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| MATHEW RAY and | ) | |
| MELVALYNNE RAY, | ) | Case No. 05-71986-fra7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| MATHEW MARTIN RAY, | ) | Adv. Proc. No. 06-6025-fra |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF OREGON, by and through the CONSTRUCTION CONTRACTORS BOARD; CRAIG P. SMITH, in his official capacity as administrator of the Construction Contractors Board; and CLIFF HARKINS, in his official capacity as chairman of the Construction Contractors Board, | ) ) ) ) ) ) ) ) | |
| | ) | MEMORANDUM OPINION |
| Defendants. | ) | |

BACKGROUND

In 2001, Plaintiff Mathew Ray filed articles of incorporation with the Oregon Secretary of State for Matt Ray

Memorandum Opinion - 1

Construction, Inc. Articles of amendment were thereafter filed in June 2004 to change the name of the corporation to Valley Concrete, Inc. Mr. Ray was president of the corporation and a shareholder. As is required under state law, the corporation obtained a construction contractor license from the Oregon Construction Contractors Board (CCB) and operated in good standing until articles of dissolution were filed by Mr. Ray on September 21, 2005. At the time of dissolution, the corporation owed money to Hughes Lumber Co. in the amount of $157.64 and to Rock N Ready Mix, LLC in the amount of $2,970.10. Those debts are still owing.

Mr. Ray and his wife filed bankruptcy on October 15, 2005, listing Mr. Ray's personal guaranty of the two outstanding corporate debts on their schedule F (unsecured nonpriority claims). An order was entered on February 14, 2006 which discharged the Debtors' personal obligation to pay the two corporate debts.

In November 2005, Mr. Ray applied for a construction contractor license from the CCB to operate as a sole proprietor. The CCB denied the application citing ORS 701.102, on the grounds that Mr. Ray was an officer of a business which had unpaid final orders for claims against it at the time of the application. Mr. Ray thereafter filed this adversary proceeding, seeking 1) a declaratory judgment that the Defendants violated the provisions

Memorandum Opinion - 2

of 11 U.S.C. §§ 525 and 362[1], 2) injunctive relief directing the CCB to issue Mr. Ray a construction contractor license, 3)compensatory damages against Defendants Smith and Harkins for violation of the automatic stay, and 4) attorney fees under § 362(h). After Defendants' Answer was filed and discovery was made, both parties filed motions for summary judgment.

## SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056. The movant has the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view the facts and draw all inferences in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, in effect before the 2005 amendments.

Memorandum Opinion - 3

A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a factfinder might return a verdict in its favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). Fed.R.Bankr.P. 7056, which incorporates Fed.R.Civ.P. 56(e), provides that the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must respond with specific facts showing there is a genuine issue of material fact for trial.  Absent such response, summary judgment shall be granted if appropriate.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326-27 (1986).

<u>DISCUSSION</u>

ORS 701.102(2)(c), the provision used by the CCB to deny Mr. Ray a new construction contractor license, provides as follows:

> (2) The Construction Contractors Board may suspend or refuse to issue a license required under this chapter to a business if:
>
> * * *
>
> (c) An owner or officer of the business [applying for a license] was an owner or officer of another business at the time the other business incurred a construction debt that is owing or at the time of an event that resulted in the revocation or suspension of the other business's construction contractor license.

A construction debt is defined as "[a] final order or arbitration award issued by the board" or " [a] judgment or civil penalty arising from construction activities within the United States."

Memorandum Opinion - 4

ORS 701.005(2). The CCB denied Mr. Ray's application for a new license because he was an officer of Matt Ray Construction, Inc., which had amounts owing under unpaid final orders at the time of the application. He was told that those debts would continue to be owed, and his application for a license denied, unless and until those unpaid debts were either paid or discharged in bankruptcy.

### Anti-Discrimination Provision of Bankruptcy Code

Plaintiffs argue that Defendants' denial of a license to Mr. Ray violates Code § 525(a), which provides in relevant part:

> [a] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to . . . a person that is or has been a debtor under this title . . . solely because such . . . debtor has not paid a debt that is dischargeable in the case under this title. . . .

Defendants acknowledge that Debtors' personal obligation to pay the debts in question was discharged in their bankruptcy. They argue, however, that the CCB has not violated § 525 because the unpaid debts, being debts of the corporation, which has not filed for bankruptcy, are not dischargeable. The CCB conditions license approval on payment of the nondebtor corporation's debts, not the debts owed by Mr. Ray as guarantor.

Relying on Perez v. Campbell, 402 U.S. 637 (1971), Plaintiffs counter that requiring a debtor to pay a debt for which his obligation has been discharged in bankruptcy, is an

Memorandum Opinion - 5

attempt to carve out an exception to Code § 525(a) and is at odds with congressional intent in providing a fresh start to debtors.

The Supremacy Clause of the U.S. Constitution, U.S. Const., Art. VI, cl.2, "invalidates state laws that 'interfere with, or are contrary to,' federal law." Baker & Drake, Inc. v. Pub. Service Commission of Nevada (In re Baker & Drake, Inc), 35 F.3d 1348, 1352 (9th Cir. 1994)(internal citation omitted). State laws that conflict with federal laws are pre-empted or nullified to the extent that they conflict. Baker & Drake at 1353. "Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. (citing Hillsborough Cty. v. Automated Medical Labs, Inc., 471 U.S. 707, 713 (1985)). To determine whether ORS 701.102(2)(c)conflicts with Code § 525(a), "we look first to the intent and sweep of the federal statute." Baker & Drake at 1352. One of the primary purposes of the Bankruptcy Code "is to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" Perez v. Campbell at 648(citations omitted).

"[F]ederal bankruptcy preemption is more likely (1) where a state statute facially or purposefully carves an exception out of the Bankruptcy Code, or (2) where a state statute is concerned

Memorandum Opinion - 6

with economic regulation rather than with protecting the public health and safety." Baker & Drake at 1353.

Because neither party submitted evidence of the legislative history concerning the state statute in question, it is unclear whether the purpose in passing it was to carve out an exception to the Bankruptcy Code. However, the provision on its face does carve out an exception to the Code as it frustrates and stands as an obstacle to the purpose of the bankruptcy discharge in providing a debtor a fresh start. Even if the legislature had some purpose in mind other than the frustration of federal law, however, it would still be rendered invalid to the extent it frustrates the full effectiveness of the federal law. See Perez v. Campbell at 651-652. In order to obtain a license to work in his field of business, the Debtor must either pay debts which he is not legally obligated to pay because his obligation was discharged in bankruptcy, or he must file bankruptcy under chapter 11 for his insolvent and dissolved corporation. As was found by Judge Snyder in an unpublished opinion with nearly identical facts to those in this case, "the Debtor could not, and should not, be required to attempt to confirm a costly Plan of Reorganization in order for [the corporation] to receive a discharge under 11 U.S.C. § 1141(d), solely to satisfy the requirements of" state law. Lee v. State of Washington, et al.

Memorandum Opinion - 7

(In re Lee), page 8, adv. proc. #05-04002 (Bankr. W.D.Wash. 3/4/05).[2]

Moreover, it is clear that ORS 701.102(2)(c) is primarily concerned with economic regulation rather than protecting public health and safety. The State argues that the provision is a consumer protection statute, rather than an attempt to collect unpaid financial obligations. However, this is belied by the fact that the requirements under that provision are discretionary (the "Board *may* suspend or refuse to issue a license")and the fact that the Board has other means of protecting the public (i.e. future customers and creditors), such as increasing the bond requirement. See ORS 701.085(5) and OAR 812-003-0170. Judge Snyder also pointed out in his Lee opinion that payment of the corporate debts in many circumstances could prove to be impossible, such as where the debtor is a minor officer in a national or international corporation.

This Court concludes that ORS 701.102(2)(c)conflicts with Code § 525(a) and is pre-empted to the extent of the conflict. This holding is limited to the facts of this case: where a debtor, who is an officer of a business, is a co-obligor of debts with that business and the debtor's obligation for those debts is dischargeable in debtor's bankruptcy.

---

[2] Opinion available at www.wawb.uscourts.gov/opinions.htm

Memorandum Opinion - 8

Automatic Stay Violation

Code § 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case . . . ." While direct actions to collect a debt clearly violate § 362(a)(6), coercive, indirect actions whose aim is to induce payment also violate the automatic stay provisions of § 362(a)(6). See e.g. Scroggins v. The Roman Catholic Church of Phoenix (In re Scroggins), 209 B.R. 727 (Bankr. D. Arizona 1997)(withholding of transcripts to induce payment of unpaid tuition was automatic stay violation). Here, the actions of the State were intended to induce payment by the Debtor of debts for which Debtor's personal obligation had been discharged. The actions of the State violated § 362(a)(6). Violation of the automatic stay is willful so as to warrant an award of damages if (1) creditor knows of the automatic stay, and (2) actions that violate the stay are intentional. A party's good-faith belief that the stay is not being violated is not relevant to whether the violation is "willful" or whether compensation must be awarded. In re Peralta, 317 B.R. 381, 389 (BAP 9th Cir. 2004)(citations omitted). The State was on notice of Debtors' bankruptcy and its actions were intentional, and thus "willful."

Memorandum Opinion - 9

Defendants argue that their actions are exempt from the automatic stay under Code § 362(b)(4), which provides that the filing of a petition does not stay

> the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's . . . police or regulatory power;

Courts, including those in the Ninth Circuit, have developed two tests to judge whether a governmental unit's action is excepted from the stay: the "pecuniary purpose" test and the "public policy" test.

"Under the 'pecuniary purpose' test, the court must determine 'whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare.'" Comm. of Massachusetts v. First Alliance Mortgage Co. (In re First Alliance Mortgage Co.), 263 B.R. 99, 107 (BAP 9th Cir. 2001)(citing In re Universal Life Church, Inc., 128 F.3d 1294, 1297 (9th Cir. 1997)). "Universal Life Church 'reject[ed] the argument that the government must have no pecuniary motive at all to fall within section 362(b)(4).' It noted that 'most government actions which fall under this exception have some pecuniary

Memorandum Opinion - 10

component' and that it is only when the action is 'solely'[3] to pursue the government's pecuniary interest that it is barred." In re Basinger, 2001 WL 33939736, n.5 (Bankr. D. Idaho 2002)(citing Universal Life Church at 1298-99). "Such actions have been described as those that would 'result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate.'" First Alliance at 107 (citing In re Charter First Mortg., Inc., 42 B.R. 380, 382 (Bankr. D.Or. 1984)).

The State argues that since it has no pecuniary interest in the outstanding debts, the Court must find that its actions relate primarily to public welfare and are exempt from the stay. However, collection of third-party debts in this instance by the State does not benefit the public welfare by penalizing past wrongful conduct or deterring future wrongdoing, as do consumer protection actions. See e.g. City and County of San Francisco v. PG&E Corp. 433 F.3d 1115 (9th Cir. 2006)(claims for restitution to third parties by state were police or regulatory power exempt from removal to bankruptcy court where state alleged defendant transferred billions of dollars to itself in violation of state law); First Alliance (restitution claims were exempt under §

---

[3] It has been noted that the use of the word "solely" appears to have been a transcription error in the Universal Life Church opinion, and that the opinion should have read "primarily." City & County of San Francisco v. PG&E Corp., 433 F.3d 1115,1125 n.10 (9th Cir. 2006).

Memorandum Opinion - 11

362(b)(4) where aggrieved parties consisted of 299 persons injured by defendant's unfair and deceptive acts which were unlawful under the state's consumer protection act). Rather, as applied in this case, the state's actions are meant to protect a certain class of creditors whose debts would be collected outside of the bankruptcy system, while other creditors would be subject to the stay and the jurisdiction of the bankruptcy court. It is meant primarily to protect private rights and the collection of third-party claims rather than to protect public interests.

The "public policy" test asks whether a governmental action seeks to effectuate public policy or to adjudicate private rights. <u>First Alliance Mortgage</u> at 108 (citations omitted). "Where the agency's action concerns only the parties who are immediately affected the debtor is entitled to the same protection it would receive under the automatic stay if the proceeding were instead in a judicial forum." <u>Id</u>. (citations omitted). In the present case, adjudication of the private rights of the unpaid creditors effectively occurred prior to the petition date. As discussed previously, however, the collection actions complained of in this case seek primarily to benefit private rights rather than to effectuate public policy.

<u>Damages</u>

Code § 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall

recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Plaintiffs reserved from their summary judgment motion the matter of damages. Defendants, while not specifically reserving any part of Plaintiffs' claims from their cross-motion for summary judgment, did not include in their concise statement of material facts any evidence regarding damages. Plaintiffs were thus not required to submit any rebuttal evidence regarding that aspect of their claims. Accordingly, trial will be held regarding damages, and the defense of qualified immunity by Defendants Smith and Harkins which was alluded to in Defendants' memo in support.

## CONCLUSION

An order will be entered by the Court finding that ORS 701.102(2)(c), as applied to the facts of this case, is pre-empted by § 525(a)of the Bankruptcy Code and that the State's actions violated Code § 362(a)(6). Further, the CCB will be enjoined from denying a contractor license to the Debtor on the basis of the unpaid debts. Left for trial will be the issue of damages for violation of the automatic stay.

FRANK R. ALLEY, III
Bankruptcy Judge

Memorandum Opinion - 13